IN THE DISTRICT COURT

DISTRICT OF DELAWARE

MARCUS L. ROBINSON,  )
   Plaintiff,         )
                      )
v.                    )   Civil Action No. #15-523-GMS
                      )
ABIGAIL E. WEST, et al, )
                      )
   Defendant.         )

FILED SEP 10 2015 U.S. DISTRICT COURT DISTRICT OF DELAWARE

MOTION FOR "RESPONSE TO Warden David Pierce"

By and through Pro'se Plaintiff hereby responds to Warden David Pierce's "Attorney" Joseph C. Handlon #3952 Deputy Attorney General & the Department of Justice Plaintiff states the following in Support thereof:

— Cruelty —

#1. — Plaintiff has asserted Cognizable claims and Facts under the "Eighth Amendment". ABIGAIL E. WEST violated Marcus L. Robinson by involuntary Servitude She basically treated him as a Condition of A Slave telling him " You will do what I want sexually and unconditionally when I want it"! "Quote" "Un Quote"! This is unusual punishment in His mental state of being. Plaintiff has Suffered Cold sweats & nightmares of ABIGAIL E. WEST making statements & out bursts of his 4th degree sexual charge which is un Professional At most. This should be A "Safety Hazard" while — Plaintiff is housed in J.T.V.C.C. prison facility. This Also should be against the Code of Conduct of..........→

...... the department. Standard Procedures and Protocol in the department should not be partial. Marcus L. Robinson is a risk now since Abigail E. West stated he had Rape 4th degree charges. These are serious allegations.

*2.— Warden David Pierce is not the offender in any way towards the "Sexual statements" made by Abigail E. West who is an Employee under Warden Pierce as an Correctional officer of the state. Warden Pierce is at fault for allowing Correctional officer's to move him to "high" "Maximum Security Units" while Robinson is an "Mentally ill being". The ACLU has sued this actuall prison facility for the Conditions Inmates endure in (SHU) Security Housing Units .... Where they are isolated from almost all contact with other human beings, and there is No meaningful mental Health treatment. The Conditions are Simply "Brutal." Warden Pierce would rather go to Court, then to release an inmate out of Security High Maximum Units......!? This in itself is questionable knowing Plaintiff is not violent or disrespectful towards staff or administration. Plaintiff suffers from "Anxiety and (ADHD) Attention deficit hyperactive disorder, and Depression along with Suicidal thoughts. Plaintiff takes Halodol 5mg medication, and Sinaquan 75mg. These conditions are very Brutal knowing Plaintiff already suffers from Suicidalization. —→ —→

Dated: September 7th, 2015         M_____ /s/
                                    SBI# 308693

James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977

#3

## RESPONSE TO WARDENS MOTION FOR PRELIMINARY INJUNCTION —

MARCUS L. ROBINSON suffers like a violent animal from Solitary Confinement that his mental state is deteriorating which leads to his Suicidal thoughts. These Suicidal thoughts can lead to Schizophrenia, Warden David Pierce is aware of these conditions back in (SHU) Units, but refuses to address the lack of treatment in Solitary Confinements. Warden Pierce is at fault for the cruelty of the Solitary Confinement, especially when Plaintiff is No violent or aggressive individual towards staff nor security.

## — ARGUMENT —

#3.

A preliminary injunction cannot be considered because movant has shown a reasonable probability of merit(s) granting preliminary relief will result in a greater harm mentally, the movant/Plaintiff will be irreparably injured by denial of the relief under § 1983 Complaint because of his "deteriorating" mental state, and the on going thoughts of his RAPE 4th Degree Charges being "exploited" along with the Sexual misconduct by ABIGAIL E. WEST, which is pictured in MARCUS L. ROBINSON's head. SEE: Boddie V. Schnieder, 105 F.3d-857 (1997) In order to survive motion to dismiss for failure to state claim upon which relief can be granted, plaintiff must ........⟶

continue Pg. 4

4. - RESPONSE -

...... assert cognizable claim and allege FACTS that, if true would support claim; in which "ABIGAIL E. WEST" did perform sexual-misconduct in a STATE facility against a mentally ill mental-health patient.

#4. — Wardens Attorney states that (Joseph C. Handlon) — the complaint has not yet been screened under the Prisoner Litigation Reform Act of 1995, which protects most Prisoner's complaints in § 1983 law suits. But one thing Attorney Joseph C. Handlon can't understand or articulate is that you can't "hide" behind a Reform Act for Prisoner's rights knowing the Prisoner is uneducated in LAW, and is mentally-ill. Prisoner/Plaintiff is so uneducated in LAW he had an inmate paralegal drawl up this "motion RESPONSE." Marcus L. Robinson asks the honorable Judge to consider his merits above & in Exhibit(A) under the director of Community Legal Aid Society, INC., Daniel-Atkins. What violates the Eighth Amendment is both ABIGAIL E. WEST and Warden David Pierce knew of the cruel and unusual punishments in "Secured Housing-Unit" (SHU) quoted by Joseph C. Handlon in the motion for Preliminary Injunction dated August 21, 2015. The two of them are co-workers let's not hide this fact. — — — →

Pg. 5
(Continue)

## 5. – RESPONSE –

#5. – Allegations that Corrections officer Abigail E. WEST verbally abused and harassed prisoner Marcus L. Robinson is NOT insufficient to state claim for Eighth Amendment violation, because prisoner is "Mentally ill"; this is Cruel and Unusual punishment Knowing officer made hand gestures towards prisoner's/Plaintiff private area AS A male verses Abigail E. West being female. Please Consider this Complaint response motion Knowing that both Staff members placed prisoner in Solitary Confinement and Knew of the harsh and Cruel restrictive Brutal Confinements. And note – that Marcus L. Robinsons' mental state was & has been deteriorating, leading him to have Suicidal thoughts. This Cruel and Unusual under U.S.C.A. Const. Amend. 8.

WHEREFORE, Plaintiff Asks the honorable Courts to Take A Good look At his Above claims, and the Exhibit (A) Attached to this Motion Complaint. Both defendants ARE solely the Supervisory Staff in A Trusted position. Warden David Pierce should Not be held responsible for Abigail E. Wests actions, but he should be held under 42 U.S.C.A. § 1983 for Knowing About the (SHU) units Harsh Confinements. SEE: Attached Exhibit (A). AND Then GRANT.

"No work ethic's in D.O.C. Secured Housing Units"
At James T. Vaughn Correctional Center:

VIEW.......

# EXHIBIT A

\* Community Legal Aid Society INC,
Sues Department of Corrections \*
(SHU) units "Secured Housing Unit's......
Mental state of minds are Deteriorating
potential Loving Fathers & brothers of Familys.
\* Marcus L. Robinson is Slowly one of
these individuals who is DETERIORATING

*EXHIBIT (A)*

# Groups sue prison for treatment of mentally ill inmates

**JESSICA MASULLI REYES**
THE NEWS JOURNAL

Two legal advocacy groups are accusing Delaware's prison system of holding at least 100 mentally ill inmates in solitary confinement without adequate treatment.

Community Legal Aid Society, Inc. and the American Civil Liberties Union of Delaware filed a 26-page federal suit Thursday saying the long periods of isolation and lack of mental health treatment are a violation of the U.S. Constitution's protection from cruel and unusual punishment.

The Securing Housing Unit at the James T. Vaughn Correctional Center in Smyrna holds 300 inmates, many of whom are deemed a security risk. About 100 of those inmates are on the Department of Correction's mental health roster, and 60 have a serious mental illness.

These inmates live in 8-feet by 11-feet cells for 23 to 24 hours per day. They can leave their cells for one hour, three days a week to shower and exercise alone in a wire enclosure, said CLASI Executive Director Daniel Atkins.

"They are isolated from almost all contact with other human beings and receive virtually no meaningful mental health treatment," Atkins said. "The conditions they endure are simply brutal."

The DOC said it has recently taken steps to address these concerns.

It moved many of the most mentally ill inmates from the SHU to a new 50-bed Secured Transition Unit last month. This unit provides inmates with more access to treatment and psychiatric services.

"We believe that continuing the constructive engagement among all interested parties that is resulting in tangible reform is the best way forward, instead of protracted litigation that would divert limited state funds from programs and treatment to attorneys and legal fees," Department of Correction Commissioner Robert Coupe said in an emailed statement Thursday.

The lawsuit noted the steps the DOC has taken but said more needs to be done.

"We would love to see the end of solitary confinement, and I think that will happen at some point, but that is not what this lawsuit is about," Atkins said. "It is about the use of solitary confinement for this subset of folks ... and limiting it significantly and ensuring it is not cruel."

Thursday's filing comes as nationwide attention has turned to the impact of solitary confinement on all inmates.



KYLE GRANTHAM/THE NEWS JOURNAL
Daniel Atkins, executive director for Community Legal Aid Society, Inc., speaks at a press conference in Wilmington on Thursday.

Thursday's lawsuit, which highlighted the stories of six unnamed inmates.

One inmate said from solitary confinement that his mental state was deteriorating, leading him to have suicidal thoughts.

He was diagnosed with schizophrenia at age 13 and has had a difficult life – sexual abuse at 9, a family history of mental illness, no education beyond sixth grade and a gunshot wound to the head at age 24.

He completed 10 psychiatric hospitalizations before being incarcerated, the suit said.

After not receiving treatment in the SHU, he filed a grievance and was promised one-on-one therapy sessions once a month. The sessions have been canceled due to security issues and lack of space, the suit said.

A counselor, contracted by the DOC, stops by his cell door three times a week to check on him, as is required, but he often says nothing about his suicidal thoughts.

"When he has chosen to report suicidal thoughts to DOC staff, he has ended up in an even more isolated setting, an observation room, stripped of clothing and all possessions, known to the prisoners as the 'naked room,'" Atkins said. "This further isolation has exacerbated the very problem that got him there, so he feels trapped and reluctant to ever report."

The DOC said it shares these concerns about the effects of solitary confinement on inmates and their eventual re-entry into society.

But, safety and security must be its priority, the statement said.

DOC uses a classification system that



Is It Time For Purchase A N

If you have a door in won't close and lock creaks and leaks (you just looks BAD. It's Door Experts at P

• We l in 2(
• We c Rep:
• 100%
  Doo

U.S. attorney general to review the practice of solitary confinement, giving some hope to those who want the practice to end.

"Do we really think it makes sense to lock so many people alone in tiny cells for 23 hours a day, sometimes for months or even years at a time?" Obama said at an NAACP convention in Philadelphia. "That is not going to make us safer. That's not going to make us stronger. And if those individuals are ultimately released, how are they ever going to adapt? It's not smart."

In Delaware, three agencies – the ACLU, CLASI and the Wilmington law firm of Pepper Hamilton LLP– began investigating conditions of solitary confinement in the state's prisons after receiving complaints. They interviewed dozens of inmates and reviewed medical records.

The investigation culminated in housed. An inmate placed in more restrictive housing can often move to less restrictive housing units with good behavior.

Inmates with mental illness often fall into a trap where their behaviors, such as screaming obscenities, throwing feces or injuring themselves, can be considered bad behavior, rather than a symptom of their mental illness, and can lead to additional time in the SHU, Atkins said. They may also lose privileges, such as phone time, family visits and access to television or radio.

"This has continued although the recognition of the harm caused by the use of solitary confinement – to prisoners and the public – is well known," ACLU Legal Director Richard Morse said.

Contact Jessica Masulli Reyes at 302-324-2777, jmreyes@delawareonline.com or Twitter @JessicaMasulli

# Christina superintendent takes leave of absence

**MATTHEW ALBRIGHT**
THE NEWS JOURNAL

Christina Superintendent Freeman Williams is taking a leave of absence, effective immediately.

District spokeswoman Wendy Lapham said she could not give a reason for the absence or how long Williams would be gone because it is a personnel matter.

Lapham said the district had not yet made plans for who would lead the district while Williams was out.

The school board is scheduled to meet at 7:30 p.m. on Tuesday at Gauger-Cobbs Middle School. Lapham said the board would likely discuss the issue then.

Williams' leave is being handled through the district personnel office and does not require school board approval, Lapham said.

During a meeting Tuesday, school board members addressed the lone item on the published agenda – Williams' "competency and abilities." The meeting was held behind closed doors.

Board president Harrie Ellen Minnehan, who called that meeting, said she simply wanted to get a head start on the annual performance evaluation the board does of its superintendent.

But others suggested the meeting meant Williams was on the hot seat.

Fred Polaski, the board's vice president, downplayed the impact of that



The reason for and length of Christina School District Superintendent Freeman Williams' leave of absence has not been disclosed.

meeting.

"There have been no actions with respect to Freeman's job with the board," Polaski said.

It has been a tumultuous year for Christina, one of the largest districts in Delaware.

District leaders spent the first few months of the year battling the state over a controversial plan to improve three Priority Schools. Voters then twice rejected the district's request to raise property taxes to fund growing costs, which means the district is laying off teachers and making other cuts for the coming school year.

Throughout all this, state leaders have pushed to remove the schools Christina runs in Wilmington from the district's control and give them to the Red Clay School District. Gov. Jack Markell signed two laws on Tuesday that start the process of planning that handover. Williams has been superintendent since July 2012.

Contact Matthew Albright at malbright@delawareonline.com, 324-2428 or on Twitter @TNJ_malbright.

Rick
Door Expert

Do It Now, Pay Later Fin:
NO Payments, NO In

P.J. Fitzpatrick is neither a lender nor a broker. All financing is provided by 3r lender. All applications are subject to approval through credit, income and resic are subject change without notice. Advertised terms are solely to be used as Not all applications will be approved for all programs. P.J. Fitzpatrick does not a applications on behalf of our customers to the lender. Approved applications b lender. Lender has final say to approve or decline of an application based on f

P.J. Fitz
WINDOWS · SIDING · RO
302-482-4040

FREE Storm Door
Installation with purchase
of Entry Door & Storm Door
PLUS another $50 OFF for Military Discount
Restrictions apply, see your Home Improvement Consultant for more details. Expires 08/31/15.

NJ Lic #13VH01142000 DE Lic #2009603(
PA# 107078 DE# 2013601085 NJ# 13VH0820150

IN THE DISTRICT COURT

DISTRICT OF DELAWARE

MARCUS L. ROBINSON,                     )
                                        )
            Plaintiff,                  )
                                        )
   v.                                   )   Civil Action No. #15-523-GMS
                                        )
ABIGAIL E. WEST            , et al,     )
                                        )
                                        )
            Defendant.                  )

## ORDER

IT IS HEREBY ORDERED, THIS _____ DAY OF _____, 20____, THAT THE ATTACHED MOTION _____ HAS BEEN READ AND CONSIDERED. IT IS ORDERED THAT THE MOTION IS HEREBY_____.

_____
District Court Judge

# Certificate of Service

I, MARCUS L. ROBINSON hereby certify that I have served a true and correct cop(ies) of the attached "Motion for Response to Warden David Pierce" Upon the following parties/persons:

To: Joseph C. Handlon
Deputy Attorney General
– Department of Justice –
Carvel State Building., 6th Flor
820 N. French Street
Wilmington, DE (19801)

To: U.S. District Court
J. Caleb Boggs Federal bldg.
844. King Street
Lock box #18
Wilmington, DE (19801)

To: _____
N/A

To: _____
N/A

**BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States Mail at the James T. Vaughn Correctional Center, Smyrna, DE 19977.**

On this 7th day of September, 20 15

SBI 308692

FR: Marcus L. Robinson
SBI# 308892   UNIT 19/W/steaming/upper #7
JAMES T. VAUGHN CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

To: "United States District Court"
J. Caleb Boggs Federal Building
844. King Street, Lockbox 18
Wilmington, Delaware
— 19801 —

Legal mail